CLIFFORD GRAVELEY, WILLIAM L. McINTOSH AND
HATTIE E. McINTOSH, PLAINTIFFS AND APPELLANTS, *v.*
CLIFFORD QUIGLEY AND ESTHER QUIGLEY, DEFEND-
ANTS AND RESPONDENTS.

No. 10475
Submitted April 15, 1963. Decided August 2, 1963.
Rehearing denied November 13, 1963.
386 P.2d 60

Loble & Picotte, Henry Loble (argued orally), Helena, for appellants.

M. K. Daniels (argued orally), William R. Taylor (argued orally), Deer Lodge, C. W. Leaphart, Jr., Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by Clifford Graveley, and others, petitioners below, hereinafter referred to as appellants, from an order of the district judge, the Honorable Philip C. Duncan, dissolving a temporary injunction and giving final judgment for the defendants, Clifford and Esther Quigley.

The action was commenced in the district court of the third judicial district before the Honorable Sid G. Stewart, to quiet title to a ditch and to enjoin the defendants from using or interfering with petitioners' use thereof. After appellants' amended complaint was filed, an injunction *pendente lite* was issued. The injunction was dissolved upon application of defendants; appellants then filed a motion for a show cause order asking for another injunction *pendente lite*. The show cause order was issued, whereupon appellants filed an affidavit of disqualification. The Honorable Victor H. Fall was called in and accepted jurisdiction. Upon the show cause hearing, Judge Fall issued the temporary injunction with the modification that defendants were permitted to use the ditch for 25 miner's inches of water. Upon the affidavit of disqualification filed by defendants, Judge Duncan was called in to hold the trial on the merits.

The case centers around ownership rights of a ditch running through the appellants' land and continuing on to the defendants' land. Both parties to the action have other sources

of water, but because of the semi-arid nature of the lands they want as much water as possible. The waters formed by the Winter's snow along the continental divide spill down Ophir Creek on their way to the Little Blackfoot River near Avon, Montana. The waters of the creek have long been a valuable commodity: first, to the early day placer miners; and later for the ranchers who replaced the miners. The ditch in question runs through the area of now abandoned Blackfoot City, an early day mining town, on the west bank of Ophir Creek in Powell County. The following sketch will aid our descriptions. We also comment that some of the testimony was directed to blackboard sketches which were not preserved in the record and caused difficulty on review.

In 1885, John R. Quigley, defendant's grandfather, owned the store and post office in Blackfoot City; he also owned some farm buildings located therein. In addition, he owned a placer mining claim south of town on the Ophir Bar. On July 27, 1885, John R. Quigley purchased a ditch from Ah Sing and Chinn Wo. The ditch was described as having its point of diversion on Ophir Gulch about 50 yards below the diversion dam of the Tiger Ditch, thence running in a westerly direction to the schoolhouse in Blackfoot City, thence to the Ophir Bar. The Ophir Bar is directly south of the schoolhouse. The ditch was labeled the "China Ditch".

On September 10, 1885, John R. Quigley filed a notice of appropriation for 400 miner's inches of water of Ophir Creek.

On July 27, 1903, John R. Quigley by deed sold the Placer claim to the Ophir Gold Mining Company, a corporation. The deed also transferred the China Ditch, said interest being 250 miner's inches of water, but reserving 25 miner's inches therein for his own use. George S. Kearney later became a successor in interest of the mining company.

Although two witnesses for the defendant testified that they remembered the China Ditch as running more southerly than the ditch now in question. there can be little doubt that

the China Ditch described in the deed of the "Chinamen" ran behind the Blackfoot City schoolhouse thence turning south as shown on the sketch.

Legend

—x—x—x— Ditch in question--established by Quigley in 1911

— — — — — Old China Ditch according to District Court's Finding

—···—···  Ditch leading to McIntosh lands

· · · · · ·  McIntosh-Davis Ditch built 1912

The appellants allege that by mesne conveyances they own the China Ditch, and that the China Ditch runs past the schoolhouse westerly to Illinois Gulch and thence southerly to the lands of Mrs. McIntosh.

The defendants contend that the old China Ditch turned south at the schoolhouse, but that John R. Quigley, II, in 1911 or 1912 constructed a new diversion dam and ditch leading

into the old China Ditch, and that he also constructed an extension westerly from the schoolhouse to Illinois Gulch, and thence over the small divide into Three Mile Basin; that by virtue of this construction and use by their predecessor in interest, that the ditch became theirs, their right having been established through (1) court decree, and (2) adverse possession, and thus, they are now the owners of the ditch in question.

We observe here, too, that John R. Quigley, II, had, in the year 1911, a co-ownership of the China Ditch by reservation in a deed of his father as previously described.

Between the testimony and exhibits, just what constituted the China Ditch is difficult to determine. Our sketch shows what the district court found. Some of the exhibits reflect that the China Ditch traversed the lands from Ophir Gulch to Illinois Gulch. Other testimony shows it as on our sketch.

To support their position, the appellants rely on a map prepared in 1915 by G. S. Kearney which was used in prior litigation over the water rights of Ophir Creek.

With the exception of Mrs. McIntosh, an appellant herein, all of the testimony by persons who were in the vicinity of the area during the critical period from 1900 to 1915, agree that the old ditch turned south at the schoolhouse, and that during 1911 or 1912 John R. Quigley, II, did in fact construct a new diversion dam upstream from the old dam and a new ditch running into the old ditch and an extension from behind the schoolhouse over to Illinois Gulch, and thence on into Three Mile Basin.

Mrs. McIntosh testified to the fact that in 1912, her husband and Mr. Davis constructed a new ditch upstream from the ditch now in question and paralleled it to Illinois Gulch, then flumed it over the ditch in question and continued on down to her lands through an old ditch. If anything, this corroborated defendants' position.

Appellants also introduced an unexecuted contract for deed

from John R. Quigley, I, dated 1892. The property conveyed included:

"Also the ditch known as the China Ditch taken out of Ophir Gulch above Blackfoot City, capacity 250 inches also second water right of three mile creek capacity 500 inches, said Ditch conveying water to Illinois Gulch."

To interpret this to mean, as appellants urge, that the waters of the China Ditch conveyed water to Illinois Gulch would be to disregard all grammatical rules. If anything, the deed would show that Mrs. McIntosh was incorrect in asserting that the waters of China Ditch ran to Illinois Gulch thence south to her property. There was testimony of an engineer, who was hired in 1911, to dig the ditch from Illinois Gulch to Three Mile Basin utilizing as much as possible, a pre-existing ditch, that had originally carried the water from Three Mile to Illinois Gulch. This contract for deed would seem to corroborate the defendants' position and derogate from the appellants' position.

The ownership of the water of Ophir Creek has been a constant point of litigation between the appellants' predecessors in interest, and the Quigley family.

The rights to the waters of Ophir Creek have been adjudicated. This case does not involve a question as to the water as such, but rather to the right to use a ditch as we shall develop later in a discussion of the issues framed by the pleadings.

Appellants introduced into evidence the decree in cause No. 1185, of the district court of Powell County, in which it was decreed that appellants' predecessor, the Ophir Mining Company, was entitled to 250 miner's inches of the water of Ophir Creek and the defendants' predecessor was entitled to 25 inches, and also a subsequent interest of 100 inches.

At one part of the findings in Cause No. 1185 it was recited that Ophir Mining Company owned the China Ditch; at another that the Mining Company owned the Tiger Ditch. The

conclusions of law in that case concluded that the Mining Company had the above-described water right by means of Tiger Ditch and also that the right was limited to "mining purposes".

In any event, neither that decree nor the pleadings described the China Ditch at all, and the trial court so found.

Following the decree in Cause No. 1185, John R. Quigley, II, instituted suit under the surplus water law claiming an additional 800 inches by prescription through a described ditch. The described ditch therein is the ditch now in controversy. The action, Cause No. 2038, was appealed for reasons not germane here (Quigley v. McIntosh, 88 Mont. 103, 290 P. 266) and final judgment was given in 1930. There was a typographical error in the description, but there can be no doubt that the ditch described therein is the ditch now in controversy.

We have heretofore described some of the situations around which the controversy exists. Now we shall set forth the issues as framed by the pleadings as they apply to the specifications of error, hereinafter set forth.

Appellants alleged in their amended complaint generally that they owned certain lands used for agricultural purposes; they then alleged that they owned and had a right to use the China Ditch. They described the China Ditch as extending from Ophir Creek through Illinois Gulch. They then described their water right, referring to the right described in Cause No. 1185, heretofore referred to. In the description appears the 25 inch reservation of water right used through the China Ditch previously referred to as belonging to the defendants Quigley.

Paragraph VIII and IX set forth "That the defendants herein claim some right, title, estate or interest in said ditch and ditches hereinbefore described, and the easement therefor, adverse to the claims of these plaintiffs, and that the claims of each defendant and all of the claims of the defend-

ants are wrongful and without right, without authority of law, and that said defendants have no right, title, estate or interest in or to said ditch or the easement therefor adverse to the interests of these plaintiffs, as the same is herein set forth;

"That notwithstanding the matters and things above pleaded, the said defendants during the month of July 1959, and ever since, have encroached upon the rights of these plaintiffs in said "China Ditch", and other ditches tributary thereto and have used and employed said "China Ditch" and other ditches tributary thereto in a manner so as to deny these plaintiffs the full use of their respective interests in said ditch; that as a result of the acts of the defendants, plaintiffs are unable to carry through said ditches hereinbefore described, the waters to which they are entitled under their water rights aforesaid, and apply the same upon their said lands to the full capacity of plaintiffs' rights in said ditch and the crops of plaintiffs have suffered and will suffer from lack of water; that except for the wrongful acts of defendants, said "China Ditch" and said ditches tributary thereto, would be available for transportation of the waters of these plaintiffs, to their full capacity and interest and would be available for use and application upon the lands of plaintiffs; that plaintiffs have protested the unlawful and wrongful acts of the defendants and have warned the defendants against persisting therein, but notwithstanding said protest and warnings, the defendants continued to, and will, unless enjoined by this honorable Court, further interfere with the rights of plaintiffs in said "China Ditch", and said ditches tributary thereto, to the irreparable injury of these plaintiffs, their crops and lands aforesaid."

The prayer was that defendants be required to set forth their claims "adverse to the ownership of these plaintiffs."

Prior to answer being filed, the injunction proceedings heretofore mentioned were had.

Defendants answered, denying that the lands of appellants

were used for agricultural purposes, then denying that there was in fact any China Ditch as alleged in the complaint: In that denial it was then asserted that two judgments and decrees made in Cause No. 1185 (previously referred to) and Cause No. 2038 entered on July 16, 1929, set forth the respective interests of the parties. In this connection defendants also denied the existence of a China Ditch, but curiously admit their own right "to use and employ said ditch to the extent of 25 miner's inches." Then they assert their own right to 925 inches of water from Ophir Creek and assert sole and exclusive use of Ophir Ditch.

Then it was alleged in paragraph VIII in response to paragraph VIII of the complaint previously quoted that:

"Admit that the defendants claim right, title, estate and interest in the Ophir Ditch, sometimes called the "Quigley Ditch" and a portion of which is erroneously called, for the purposes of this action by the plaintiffs, "China Ditch", further admit that the defendants claim the easement for the use of the "Ophir-Quigley" Ditch, adverse to the plaintiffs; deny that the claims of each defendant and all of the claims of the defendants are wrongful, without right, without authority at law; and in that connection allege that the plaintiffs' claims concerning the ditches aforesaid are wrongful, without right, and without authority at law, and deny that the defendants have no right, title, estate or interest in and to said ditch and the easement therefor, adverse to these plaintiffs, and in that connection allege that the plaintiffs have no right, title, estate or interest in or to said ditch or the easement therefor."

Then two affirmative defenses were plead. The first plead in part the construction by defendants' predecessor of a described ditch from a point of diversion in Ophir Creek for some six miles. Then they plead water rights, 25 inches appropriated in 1865, 100 inches appropriated in 1912 and an

additional 800 inches appropriated in 1928. Paragraph VI then stated:

"That these defendants allege that, continuously each year for more than ten years prior to the commencement of this action on October 6, 1959, these defendants and their grantors and predecessors in interest, have been in the *continuous, exclusive, open and notorious possession* of said ditch and ditch rights." Emphasis supplied.

The second affirmative defense, after re-pleading the matters in the first affirmative defense up to the foregoing Paragraph VI then plead:

"II. That John R. Quigley is the predecessor in interest of the defendant Clifford Quigley, with respect to the ditch and water rights heretofore alleged and that in the case of John R. Quigley v. William McIntosh, Hattie E. McIntosh, Agnes McIntosh, Gilbert H. McIntosh, Hugh Davis, Donald P. Murray, Julia Kimmerly, George A. Kimmerly, Alma Kimmerly, Kittie Quigley, John R. Quigley, Jr., Clifford A. Quigley, James McGilvery, Andrew Stumvall, John Lenning, Joseph Davis, as administrator of the Estate of Lewis Davis, deceased, Markley Davis, William David, Ben F. Davis, Markley W. Davis, Flora Price, and Ophir Mining Company, a corporation, being Cause No. 2038 before this honorable court, the court found in its Findings of Fact and Conclusions of Law, attached to the Judgment and Decree, (Finding of Fact No. 14), to-wit:

" '14. That by virtue of having diverted water from Ophir Creek and conveyed the same through the ditch above described for more than ten years prior to the commencement of this action to the extent of eight hundred miners' inches, equivalent to a flow of twenty cubic feet of water per second of time, said plaintiff has acquired a right by prescription to divert said water through said ditch to the extent of eight hundred miners' inches and convey the same to his said lands.'

"III. That the plaintiff in that said action, John Quigley,

was the predecessor in interest to the defendants here; that the judgment of this court, duly made and given on the 16th day of July 1929, was not appealed nor excepted to by the plaintiffs herein or their predecessors in interest.

"IV. That since the date of the entry of that decree of judgment above referred to, the plaintiffs in this action and their predecessors in interest, have honored that decree and judgment for more than ten years prior to the commencement of this action and have in no way interfered with the defendants' use of the said "Ophir-Quigley Ditch" prior to October 6, 1959.

"V. That by virtue of the Findings of Fact, Conclusions of Law, and Judgment and Decree entered on July 16, 1929, by this honorable court in Cause No. 2038, plaintiffs and their predecessors in interest have honored the water rights of the defendants and their predecessors in interest in the "Ophir-Quigley Ditch", in its present physical condition over and across the properties of these plaintiffs and defendants.

"VI. That the course of the said ditch has not been changed since the year 1913; that the plaintiffs and their predecessors in interest have honored the judgment and decree of this honorable court, and that the plaintiffs, although allegedly having acquired later deeds, averred in their amended complaint, have acquired the rights of parties or successors in interest of parties bound by the decree in Cause No. 2038, and the very matters litigated in said suit are now sought to be re-litigated by the plaintiffs; that plaintiffs are estopped by said judgment from so doing."

The prayer then asked that the judgment in Cause No. 2038 be confirmed, that defendants have the sole and exclusive use of the described ditch, and that the injunction previously granted appellants be lifted.

Appellants replied, generally denying all the matters except the right of defendants to use the described ditch by whatever name it is called, whether "China Ditch", "Ophir Ditch",

"Quigley Ditch" or "Ophir-Quigley Ditch". Particularly as to the second affirmative defense the reply stated:

"Replying to paragraph II thereof, admit that John R. Quigley is the predecessor in interest of the defendant, Clifford Quigley, with respect to certain ditch and water rights, but deny that such ditch and water rights are such as are claimed herein by defendants; and plaintiffs admit that in cause No. 2038 of the records of this court a finding of fact is therein contained which reads in the manner set forth in said paragraph, but plaintiffs allege that said decree so made and entered in said cause No. 2038 is subject, in all things, to the provisions of the decree previously made and entered in Cause No. 1185 of the records of this court, and plaintiffs further allege that said finding of fact so referred to in said paragraph does not now have, nor did it ever have, the meaning attributed to it and claimed for it by defendants."

Thus issue was joined.

The appellants describe in their brief the issues thus joined as "ownership of an irrigation ditch which conveys water from Ophir Creek southwesterly to Illinois Gulch. The plaintiffs, calling this ditch 'China Ditch,' claimed full ownership thereof except for the right in defendants to use the ditch for 25 miner's inches of water. The defendants, calling the same ditch the 'Ophir-Quigley Ditch', claimed the ownership thereof based on adverse possession and estoppel by judgment. The lower court held in favor of defendants against plaintiffs and enjoined plaintiffs from using the ditch in any manner, although plaintiffs own the land over which the ditch passes."

Specifications of error Nos. 1 and 2 are:

"1. The court erred in overruling plaintiffs' demurrer to defendants' answer in that defendants failed to plead adverse possession. The court thereafter erred in receiving testimony concerning adverse possession, during the trial, and again erred in considering testimony of adverse possession, and again

in making findings of fact and conclusions of law based upon proof of adverse possession by defendants.

"2. The court erred in receiving into evidence, or in considering in any manner or at all, the decree and judgment in cause No. 2038, which was introduced as part of defendants' exhibit 'E'."

The appellants demurred on the ground that the affirmative answer failed to state facts sufficient to constitute a defense to the action. The court overruled their demurrer apparently without argument. However, in order to protect their rights for appeal, the appellants continuously objected to the introduction of any testimony which would go to show adverse user and also objected to introduction of defendants' exhibit No. E which were the pleadings, findings, conclusions and decree in Cause No. 2038.

Judge Duncan found that Cause No. 1185 was a determination of water rights to Ophir Creek, and that ownership of the ditch was not an issue therein, and furthermore the description of the ditch was vague and uncertain, thus, it could not now be used to establish ownership as to the ditch as distinguished from the water right.

Judge Duncan further found that ownership of the ditch was an issue in Cause No. 2038, and the findings therein are binding upon the parties herein. The decree in that cause in part read as follows:

"Findings of Fact and Conclusions of Law.

"14. That by virtue of having diverted water from Ophir Creek and conveyed the same through the ditch above described for more than ten years prior to the commencement of this action to the extent of 800 miner's inches, equivalent to a flow of twenty cubic feet of water per second of time, said plaintiff has acquired a right by prescription to divert said water through said ditch to the extent of 800 miner's inches and convey the same to his said land.

"Conclusions of Law

"2. That plaintiff and petitioner is entitled to a decree herein awarding and decreeing to him the right to divert said water from Ophir Creek at the headgate and point of diversion described in the Findings of Fact foregoing, and to convey the same to the extent of 800 miner's inches, equivalent to a flow of twenty cubic feet of water per second of time, through the ditch described in said Findings of Fact, to his lands described in said Findings of Fact, and to use the same."

Judge Duncan found as a fact that the ditch now in controversy had been constructed in 1911-1912 by John R. Quigley, II, except for about 200 yards of the China Ditch utilized by him, and as to that he found that the defendants had proved adverse possession in Cause No. 2038, and, in effect, that they had not since abandoned their right.

Following conclusion of the testimony, Judge Duncan made a tour of the premises accompanied by counsel for both sides, and was later presented with a copy of the transcript and brief of counsel before he issued his Findings of Fact and Conclusions of Law. Judge Duncan found for the defendants and dissolved the temporary injunction.

Appellants dwell at length in argument on the niceties of pleading as the specifications relate to them.

Returning now to specification of error No. 1, appellants urge that the court erred in not sustaining the demurrer to the affirmative defense and further erred in allowing evidence as to adverse user to be introduced over their objections. Appellants allege in effect that the affirmative defense quoted supra, failed to allege the essential element of adversity or hostility.

This court was faced with the issue in King v. Schultz, 141 Mont. 94, 375 P.2d 108, of the sufficiency of pleading adverse possession. In that case, we found that if there was error in failing to sustain the demurrer, that it was not prejudicial in view of the lack of substantial credible evidence to sup-

port allegations of adverse user, which affirmed the decision of the district court.

We have much the same situation here because, as we read the pleadings, findings and conclusions in this case and the pleadings, findings and conclusions in Causes No. 1185 and 2038, the issue of adverse possession was determined as to the ownership of this described ditch in Cause No. 2038 and this ownership has never been abandoned. If this be the meaning of the district court's decree, it would make no difference in the result whether or not a sufficient pleading of adverse possession was made. Of course, it is apparent that some confusion existed in the minds of counsel for both sides and the judge as to the issues framed, hence, we have laboriously quoted the issues in an effort to show that indeed the decree in Cause No. 2038 was of this significance.

This leads us to specification No. 2 as to estoppel by judgment in that defendants' exhibit E was received into evidence. First off, appellants make an issue that the pleading stated the date of the decree as July 16, 1929, whereas the final judgment was dated August 29, 1930. As previously related the judgment dated July 16, 1929, was appealed to this court and subsequently the findings of fact and conclusions of law were modified, but not in any particular, pertinent or material here, and on August 29, 1930, final judgment of the District Court was entered. A reading of the pleadings concerning Cause No. 2038 will indicate the parties, the number of the cause, and in every way put the parties on notice as to the issue. We see no prejudicial error here.

Also appellants urge that defendants' exhibit E was not a proper judgment roll as such. It is true that it did not contain all the judgment roll, but it is equally true that it contained the matters pertinent and material here. In any event, appellants had every opportunity to clarify it if they so chose. We find no merit in specification of error No. 2.

As to specifications of error No. 3 and 4, we observe

that they encompass almost every factual finding of the district court and the judgment. We have carefully and exhaustively examined the records and the exhibits as very obviously the district judge did. We do not find where the district court is in error, and thus the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN CONWAY HARRISON and DOYLE, concur.