JUSTICE TRIEWEILER
concurring and dissenting.
¶62 I concur with the majority’s resolution of issues two through six. I dissent from the majority’s conclusion under issue one that the Defendant James C. Quigley’s irrigation ditch easement is limited to a conveyance 800 miner’s inches.
¶63 Although various district court proceedings are discussed in the majority Opinion, only one proceeding, Powell County District Court Number 4234, actually decided ownership of Ophir Ditch and decreed the amount of flow that should be permitted through that ditch. That decree which was entered on March 24, 1962, stated:
Now, therefore, it is ORDERED ADJUDGED AND DECREED that the defendants, Clifford Quigley and Esther Quigley, are the owners of the ditch variously referred to as the Ophir Ditch, Ophir-Quigley Ditch, Quigley Ditch and China Ditch, and have the right to flow 925 inches of the waters of Ophir Creek in and through said ditch;.... [Emphasis added.]
¶64 That decree was affirmed by this Court in Graveley v. Quigley (1963), 142 Mont. 596, 386 P.2d 60. Clifford Graveley did not appeal the district court’s conclusion that Quigleys were entitled to flow 925 miner’s inches of water from Ophir Creek through the Ophir Ditch and is, therefore, bound by principles of res judicata to that finding and conclusion. Instead of applying this simple principle based on the previous decree’s plain language, the majority re-try the entire issue on appeal to arrive at a contrary result.
¶65 It is true that in the legal description incorporated in the 1962 *246 decree, there is a reference to a “carrying capacity of 800 miner’s inches” in the same ditch. However, it is apparent from the findings and conclusions that the district court did not intend to be bound by that limitation found in the legal description. In its Finding of Fact No. 3 entered in the same action on February 21, 1962, the district court made the following statement immediately after setting forth the same legal description:
[A]ny differences between the description just given of said ditch and the various type written descriptions appearing in said Cause Number 2038,... are mere clerical and stenographical errors that the plat or map filed with the petition of plaintiff and petitioner, John R. Quigley, at the commencement of Cause Number 2038 and prepared by E. J. Strasburger, a competent engineer and witness in cause number 2038 as well as in this action, which plat or map was plaintiffs exhibit two in Cause Number 2038 and defendant’s AA in this action was and is a correct survey and description of said ditch and area in controversy, is referred to and forms a part of the decrees and judgments in Cause Number 2038, and controls all descriptions of said ditch in Cause Number 2038 and this action.
¶66 In other words, while the district court in 1962 used the legal description relied on by the majority at various points in its findings, conclusions or decree, it made clear that to the extent that legal description was inconsistent with E. J. Strasburger’s map which was offered as an exhibit in that case, Strasburger’s map controlled. That map is also an exhibit in this case and its meaning is not self-evident. However, apparently Strasburger testified in Cause Number 4234 and his testimony and exhibit formed the basis for the District Court’s conclusion of law and decree that Quigleys were entitled to flow 925 miner’s inches through Ophir Ditch. As an example, the district court’s Conclusion of Law I, entered on February 21,1962, also clearly states as follows:
That the defendants, Clifford Quigley and Esther Quigley, are the owners of the ditch variously referred to as the Ophir Ditch, Ophir-Quigley Ditch, Quigley Ditch and China Ditch, and described more particularly in the court’s Finding Number 3, and have the right to flow 925 inches of the waters of Ophir Creek in and through said ditch.
¶67 The district court’s inclusion of the legal description of the ditch in Finding No. 3 is inconsistent with the district court’s conclusion and decree. However, the district court explained that it did not intend to *247 be bound by that legal description where it was inconsistent with other more accurate evidence. There is nothing unclear, however, regarding the district court’s conclusion of law or the district court’s decree. Quigleys were given the right to flow 925 miner’s inches through Ophir Ditch. The Supreme Court affirmed that decree and Graveley is now bound by that decree, notwithstanding the majority’s selective reliance on evidence which would have supported a contrary result.
¶68 The majority Opinion in ¶ 9 states that the district court found in 1962 that Quigley’s ditch had a carrying capacity of800 miner’s inches. That is not correct. The only reference to 800 miner’s inches is included in the legal description of the ditch included in the district court’s findings by which the district court specifically stated it did not intend to be bound.
¶69 The majority Opinion makes repeated reference to the district court’s interlocutory 1965 order which established a capacity for Quigley’s ditch of 800 miner’s inches. However, as the District Court in this case correctly noted, no final order was entered in Cause No. 4311 and the interlocutory order is not legally binding on either party. That conclusion has not been appealed by Graveley.
¶70 The majority Opinion states in ¶ 26 that the district court in its 1930 Opinion limited Quigley’s right of conveyance through his ditch to 800 miner’s inches. However, the 1930 Opinion did not adjudicate Quigley’s right to use of his ditch. It merely consists of the amended findings of fact and conclusions of law made by the district court following remand by this Court in Quigley v. McIntosh (1930), 88 Mont. 103, 290 P. 266. The only thing adjudicated in that case was the amount of water Quigley was entitled to appropriate from Ophir Creek. The amount of water Quigley was entitled to transfer through his ditch was not at issue and the reference relied on by the majority is, therefore, irrelevant dicta.
¶71 Finally, in ¶ 29, the majority erroneously states that language describing Quigley’s ditch as having a carrying capacity of 800 miner’s inches has been used in proceedings between the parties, without objection by Quigley, since 1928. As previously pointed out, the only decree directly on point provided a right to convey 925 inches. Why would Quigley challenge it?
¶72 For these reasons, I conclude that the District Court erred when it limited Quigley’s historic right to convey water through his ditch to 800 miner’s inches. I would reverse that part of the District Court’s judgment and dissent from the majority’s conclusion to the contrary.